IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | |
| DAVID HALL | : | NO. 06-2-1 |

MEMORANDUM

Bartle, C.J.                                               May 4, 2010

Before the court is the motion of defendant David Hall to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

Hall was found guilty by a jury on July 31, 2006 of: (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 18 U.S.C. § 846 (Count One); (2) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and (3) possession with intent to distribute 500 grams or more of cocaine within 1,000 feet of a school, in violation of 21 U.S.C. § 860(a) (Count Three). Hall was sentenced on December 18, 2006 to a term of imprisonment of 280 months and a term of supervised release of eight years.

The court found that Hall was a "career offender" within the meaning of the United States Sentencing Guidelines and was involved with distributing approximately three kilograms of cocaine. The court rejected the claims of Hall that he was entitled to a downward adjustment as a minor participant or that

he was entitled to a downward departure on the ground that his criminal history category of VI overstated the seriousness of his criminal history. The Court of Appeals for the Third Circuit affirmed. See United States v. David Hall, 280 Fed. App'x 241, No. 06-5106 (3d Cir. May 27, 2008). Hall sought a writ of certiorari from the United States Supreme Court, which was denied. 129 S. Ct. 438 (2008).

Hall now alleges in his § 2255 petition that he was deprived of his Sixth Amendment right to effective assistance of counsel not only at trial and sentencing but also on appeal. He further maintains that he was denied his Fourth Amendment right to due process of law as a result of the government's alleged Brady violations.

I.

The underlying facts, in the light most favorable to the Government, are as follows. On September 6, 2005, Philadelphia police officers Michael Maresca and Joseph McCauley were driving a marked police car northbound on 7th Street when they observed what they believed to be a narcotics transaction taking place at the intersection of 7th and Green Streets. This transaction did not involve Hall or his co-defendants Ronald Austin and Syreeta Womack.[1] After circling the block, the officers pulled their car behind a silver Monte Carlo coupe at that intersection. The passenger door was ajar, and Austin was

---

1. Hall's two co-defendants, Austin and Womack, pleaded guilty immediately prior to counsel's closing arguments.

standing at the rear of the vehicle where he was holding a brick-like object wrapped in duck tape. The police officers recognized the object to be a "kilo" of cocaine.

Austin then dropped the cocaine on the ground, walked towards the open passenger door, and placed a firearm in the front passenger side area of the vehicle. The police officers exited their vehicle with their weapons drawn. Austin fled southbound on 7th Street with McCauley in pursuit.

Maresca proceeded to the Monte Carlo where Hall was sitting in the rear seat and Womack in the driver's seat. After observing the firearm that Austin had placed in the passenger area, Maresca ordered Hall and Womack to show their hands. Hall attempted to leave the vehicle and shouted, "this ain't mine, this ain't mine. It's not my shit..." Officer Maresca grabbed Hall to prevent him from fleeing and pointed his gun at Womack. He directed her to turn off the car's engine.

When Maresca handcuffed and arrested Hall, he saw on the rear seat an open brown box containing two kilograms of cocaine, packaged similarly to the one Austin had dropped. At trial, the evidence revealed that these packages all contained an outer layer of duct tape, a layer of plastic, a layer of "ball bearing grease," a layer of cellophane wrap, and cocaine inside. Upon his arrest, Hall had $1,413 of cash on his person, the majority of which was broken down into separate stacks, each containing five $20 bills. Hall also was carrying two cellular telephones.

McCauley, in the meantime, apprehended Austin approximately one block from the Monte Carlo and returned him to the scene. McCauley recovered two cellular telephones and $600 in cash from Austin. He also seized the firearm placed in the car.

The phone records for the cellular telephones belonging to Hall and Austin showed a series of calls between them from June, 2006 through September 5, 2006, the day of their arrest. On that day, Hall and Austin had placed 17 calls to each other.

Detective Lewis Palmer, an expert narcotics witness, testified that narcotics traffickers use telephones to contact each other to arrange deals. He also stated that it is common for traffickers to carry large amounts of cash, arranged in bundles of $100. According to the detective, the street value of one kilogram of cocaine was approximately $100,000 at the time of Hall's arrest and only someone involved in narcotics distribution would have been allowed to sit so close to two kilograms of cocaine.

Hall presented four eyewitnesses, including Womack, who testified that Hall was not in the car at the time of the officers' arrival at the scene. All four stated that Hall was standing in a crowd across the street from the incident and that the police officers randomly selected Hall from the crowd for arrest. The jury did not find this testimony credible.

II.

Hall alleges ineffective assistance of counsel under the standard set forth in Strickland v. Washington. 466 U.S. at 687. He contends that counsel was ineffective for: (1) conceding that he lacked standing to seek the suppression of physical evidence and his arrest prior to trial; (2) failing to object to the court's designation of him as a career offender, which resulted in an enhanced sentence; and (3) failing to request an en banc rehearing of the denial his appeal based on the sufficiency of evidence presented at trial.

Under the Strickland standard, Hall bears the burden of proving that: (1) counsel's performance was deficient; and (2) he suffered prejudice as a result. Id.; United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989). The first prong requires that "[counsel's] performance was, under all the circumstances, unreasonable under prevailing professional norms." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Our scrutiny of counsel's performance is highly deferential in that we presume counsel's actions were undertaken in accordance with professional standards and as part of a "sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). To satisfy the prejudice prong, Hall must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id.

-5-

When ruling on a § 2255 petition, the court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

Hall argues that Edwin Jacobs, his trial counsel, improperly conceded that Hall did not have standing to seek suppression of the contraband that police officers found at the scene and of his arrest immediately thereafter. Hall maintains that he was not in the vehicle at the time of the incident. He argues that his arrest was in contravention of the Fourth Amendment because the police had neither a warrant nor probable cause to believe that he had committed a crime.

Hall cannot meet his heavy burden to sustain this claim. An attorney cannot be ineffective for failing to raise a claim that lacks merit. Moore v. Deputy Comm'r of SCI-Huntingdon, 946 F.2d 236, 245 (3d Cir. 1991). A defendant must have a legitimate expectation of privacy in the area searched in order to have standing to seek suppression of any evidence found during the search. See United States v. Salvucci, 448 U.S. 83, 91 (1980); In re Search Warrant (Sealed), 810 F.2d 67, 69 (3d Cir. 1987). It is undisputed that the vehicle in question did not belong to Hall. Whether he was present merely as a passenger or was not present at all, he has no legal standing to challenge the search of that motor vehicle. See Rakas v. Illinois, 439 U.S. 128, 133-34 (1978).

Even if Hall had standing to seek suppression, he still is unable to show that the result of the trial would have been different because any attempt at suppression would have failed. Here, the cocaine and the firearm were within the plain view of the police officers at the scene. The incriminating nature of the gun and narcotics were immediately apparent to the officers and justified a warrantless seizure. See Minnesota v. Dickerson, 508 U.S. 366, 375 (1993).

Further, any attempt to suppress his arrest would also necessarily fail. A seizure of a person without a warrant is constitutional if supported by probable cause. Edwards v. City of Philadelphia, 860 F.2d 568, 575-76 (3d Cir. 1988). The credible testimony established that Hall was inside the vehicle, seated next to two packages, each containing a kilogram of cocaine, when police officers arrived on the scene. The testimony of Hall's witnesses who placed him in a crowd of people across the street from the incident was not believable.

Under the totality of these circumstances, the police officers were justified in believing that there was probable cause that Hall had committed a crime. There is no likelihood that Hall's joining in the suppression motion would have changed the outcome of either that motion or the trial as a whole.

In addition, Hall maintains that he received ineffective assistance because Robert Ratliff, his attorney at sentencing and on appeal, failed to object to the court's

enhancement of Hall's sentence based on an improper designation as a "career offender" under the Sentencing Guidelines.

"Where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance." Jansen v. United States, 369 F.3d 237, 244 (3d Cir. 2004). "The prejudice prong is satisfied when a deficiency by counsel resulted in a specific, demonstrable enhancement in sentencing -- such as an automatic increase for a 'career' offender or an enhancement for use of a handgun during a felony -- which would not have occurred but for counsel's error." United States v. Otero, 502 F.3d 331, 337 (3d Cir. 2007) (quoting United States v. Franks, 230 F.3d 811, 815 (5th Cir. 2000)).

The Sentencing Guidelines provide significantly heavier penalties for those defendants designated as "career offenders." The United States Sentencing Guidelines in place at the time of Hall's conviction and sentencing provided that a defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guidelines Manual § 4B1.1(a) (2006). It is conceded that Hall was 37 years old at the time of his arrest on September 6, 2005. Furthermore, possession with intent to distribute 500 grams or more of cocaine, the instant offense of

-8-

conviction, is a controlled substance offense.  See U.S. Sentencing Guidelines Manual § 4B1.2(b) (2006).

Hall, however, disputes that he meets the third criterion for career offender status.  He maintains that he does not have at least two prior felony convictions for either a crime of violence or a controlled substance offense.  According to Hall, the four prior controlled substance offenses that the court used to designate him a career offender should properly be counted as a single controlled substance offense under the Sentencing Guidelines because they are "related."  At the sentencing hearing in this court, Ratliff did not contest the "career offender" designation.

As noted above, Hall was convicted on July 31, 2006 and sentenced on December 18, 2006.  At that time, the Guidelines specified that, for the purpose of determining whether a defendant was a career offender, prior felony convictions were to be counted separately unless they were "related."  The Commentary to the Sentencing Guidelines provided that:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.3 (2006).

Despite the fact that Hall's four prior controlled substance convictions were consolidated for trial and sentencing in the Court of Common Pleas of Philadelphia County, they are not related because they involved four offenses, separated by four intervening arrests.  Hall was first arrested on May 20, 1989 for the offense of manufacturing, delivering or possessing with intent to distribute a controlled substance.  According to the Presentence Investigation Report, on May 19, 1989, Hall was observed delivering a vial of crack cocaine to another person and had in his possession a total of 26 vials of crack cocaine.

The record also establishes that Hall was next arrested on September 13, 1989 for another offense of manufacturing, delivering or possessing with intent to distribute a controlled substance.  He was arrested for a third time on November 2, 1990 for two additional offenses involving the manufacture, delivery, or possession with intent to distribute a controlled substance. The state court docket sheets note that the offenses took place on September 4 and November 1, 1990, respectively.  Finally, Hall was arrested on November 3, 1991 for one more drug offense which happened on November 1, 1991.  These four arrests were then consolidated for his sentencing on April 1, 1992.[2]

---

2. Hall was again arrested on March 13, 2004 for possession of a controlled substance, to which he pleaded guilty on June 30, 2005.  Under the Sentencing Guidelines, however, mere possession of a controlled substance without an intent to distribute does not qualify as a "controlled substance offense" for purposes of determining whether a defendant is a career offender. See U.S. Sentencing Guidelines Manual § 4B1.2(b) (2006).

Hall's original May 19, 1989 arrest is separated from his consolidated state trial and sentencing by three intervening offenses and arrests. Thus, these four separate controlled substance convictions are not related under the Sentencing Guidelines even though sentencing was imposed on all four at the same time.

Since Hall has four controlled substance convictions, he qualifies as a career offender under the Sentencing Guidelines. Hall's counsel had no basis on which to challenge his status as a career offender. His counsel's performance was not deficient.

Hall further contends that he received ineffective assistance because his attorney on appeal failed to file a petition for rehearing or a rehearing en banc in the Court of Appeals for his insufficiency of evidence claim. Attorney Ratliff, however, did file a petition for writ of certiorari from the United States Supreme Court, which was subsequently denied. See United States v. David Hall, 129 S. Ct. 438 (2009).

The Court of Appeals for the Third Circuit disfavors petitions for rehearing or rehearing en banc. See 3d Cir. L.A.R. 35.4 (2008). As the Supreme Court explained in Austin v. United States, "Though indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review." 513 U.S. 5, 8 (1994). A petition to the Court of Appeals for rehearing or rehearing en banc is

discretionary. In United States v. Coney, our Court of Appeals stated that appellate counsel,

> having appropriately briefed ... an appeal, is not under an obligation to file a petition for rehearing or rehearing en banc.... The determination whether to file rests with the sound professional judgment of the attorney in light of the all circumstances...

120 F.3d 26, 27 (3d Cir. 1997). Local Appellate Rule 35.1 provides that counsel should only file such a petition if he or she believes that

> the panel decision is contrary to decisions of the United States Court of Appeals for the Third Circuit or the Supreme Court of the United States, and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court ... that this appeal involves a question of exceptional importance.

3d Cir. L.A.R. 35.1 (2008); see also Fed. R. Civ. P. 35. The denial of Hall's appeal by the Court of Appeals is not contrary to any decision by the Supreme Court of the United States or the Court of Appeals for the Third Circuit. Nor does Hall's claim raise any questions of exceptional legal importance. The Court of Appeals concluded that "We are satisfied, given our thorough review of the record, that substantial evidence supported the verdict here and that no further discussion is necessary." United States v. David Hall, 280 Fed. App'x 241, 243 (3d Cir. 2008). Attorney Ratliff was well within his sound professional judgment in deciding not to file such a petition and his representation did not fall below prevailing professional norms.

In sum, Hall fails to meet his burden of proving that either of his attorneys rendered ineffective assistance under Strickland. We will deny his petition on this ground.

III.

Hall also alleges that the government deprived him of due process by failing to disclose exculpatory materials under Brady v. Maryland, 373 U.S. 83 (1963). He argues that at the time of trial the government knew or should have known that the arresting officers were the subject of citizen complaints, internal affairs inquiries, and civil complaints alleging sexual assault, abuse of process, excessive force, and assault. He also argues that the government should have disclosed an Internal Affairs Bureau investigation ongoing in the narcotics unit to which the officers belonged.

In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See 373 U.S. at 88. The Supreme Court later extended this requirement to include the disclosure of material impeachment evidence. See Giglio v. United States, 405 U.S. 150, 153-54 (1972). As the United States Supreme Court related in Strickler v. Greene, "There are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed

-13-

by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281-82 (1999).

As an initial matter, Hall's claim for <u>Brady</u> violations is procedurally barred because it was not presented during Hall's direct appeal of his conviction. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" See <u>Bousley v. United States</u>, 523 U.S. 614 (1998) (internal citations omitted).

Hall has failed to plead any cause for his delay in bringing these alleged violations to the court's attention. He does not claim that he just learned of the complaints and investigation or that any newly discovered evidence exists. Nor has he produced any evidence of his actual innocence outside of testimony and evidence discredited at trial. Hall may not now raise <u>Brady</u> claims that he should have raised at an earlier date.

Even if Hall were now permitted to bring these claims, there is no basis on which to grant relief. "In order to be material, evidence suppressed must have been admissible at trial." <u>United States v. Oxman</u>, 740 F.2d 1298, 1311 (3d Cir. 1984), <u>vacated on other grounds</u>, 473 U.S. 922 (1985). The unrelated civil and internal affairs complaints would be inadmissible because they involve the mere filing of legal claims and do not involve issues of honesty or credibility. See Fed. R. Evid. 608, 609. Similarly, the Internal Affairs Bureau

-14-

investigation into the narcotics unit and all related news accounts fail to show any connection to the arresting officers. This material would not be admissible to attack the substance of the officers' testimony or their credibility. <u>See</u> Fed. R. Evid. 401-403.

Hall's claim for relief based on <u>Brady</u> violations is unavailing. We will also deny his petition on this ground.